MATTER OF RICO

In Exclusion Proceedings

A-21421850

*Decided by Board April 15, 1977*

(1) Applicant was admitted to the United States for permanent residence September 26, 1966. He subsequently assumed commuter status and had commuted from his residence in Mexico to his employment in the United States for a period of two and one-half years prior to September 19, 1975, when he was stopped at the border driving a vehicle found to contain 162 pounds of marihuana. He was detained for an exclusion hearing under section 212(a)(23) of the Immigration and Nationality Act on the ground that he had attempted to smuggle 162 pounds of marihuana into the United States in violation of law. He was subsequently paroled into the United States pending criminal prosecution for violation of 21 U.S.C. 952(a) and 960(a)(1), and his exclusion hearing.

(2) Applicant is excludable under section 212(a)(23) of the Act notwithstanding the subsequent dismissal of the criminal complaint against him because section 212(a)(23) provides that an alien may be excluded if an immigration officer knows or has reason to believe the alien is or has been an illicit trafficker in drugs. Conviction of a particular offense or violation is not necessary to establish the ground of excludability under this section.

(3) One attempt at smuggling by applicant who was found to be a knowing and conscious participant in the attempt to smuggle marihuana into the United States is sufficient to render the applicant an illicit trafficker in drugs. By virtue of section 9 of the Act of September 14, 1960 (74 Stat. 504), if the immigration officer knows or has reason to believe the applicant is or has been an illicit trafficker in marihuana, the applicant is excludable under section 212(a)(23) of the Act.

EXCLUDABLE:

Act of 1952—Section 212(a)(23) [8 U.S.C. 1182(a)(23)]—Illicit trafficker in marihuana

ON BEHALF OF APPLICANT: Ramon R. Alvarez, Esquire
541 Tenth Street
P. O. Box Drawer V
Douglas, Arizona 85607

BY: Milhollan, Chairman; Wilson, Maniatis, and Appleman, Board Members

This is an appeal from an order of the immigration judge, dated February 11, 1976, finding the applicant inadmissible under section 212(a)(23) of the Immigration and Nationality Act. The immigration judge ordered the applicant's exclusion and deportation from the United States. The appeal will be dismissed.

The applicant is a 26-year-old married male alien who is a native and

citizen of Mexico. He was originally admitted to the United States for permanent residence on September 26, 1966. On September 19, 1975, the applicant applied for admission to the United States as a returning resident alien (commuter). The applicant was detained for an exclusion hearing on the ground that on September 19, 1975, he attempted to smuggle 162 pounds of marihuana into the United States in violation of law. On October 15, 1975, the applicant was served with an official notice (Form I–122) which informed him that he appeared to come within the exclusion provisions of section 212(a)(23) of the Act. He received three subsequent hearing notices dated October 17 and 30 and November 19, 1975. A copy of a Service Form I–94 (parole edition) is of record. That document shows that the applicant was paroled into the United States pending his criminal prosecution and exclusion hearing.

The first hearing was conducted by Immigration Judge Jay Segal on December 8, 1975. A continued hearing was conducted by Immigration Judge Reece B. Robertson on February 11, 1976. Upon reviewing the transcript of the second hearing, we are satisfied that the immigration judge complied with the procedural requirements of 8 C.F.R. 242.8(b) which pertain to the substitution of immigration judges. See *Matter of Ponco*, Interim Decision 2326 (BIA 1974).

The record reveals that the applicant is a permanent resident alien who commuted from his residence in Agua Prieta, Mexico, to his place of employment in Sierra Vista, Arizona, for a period of about two and one-half years prior to September 19, 1975. On that date, he attempted to enter the United States at the port of entry in Douglas, Arizona. He was stopped by a motor vehicle inspection team composed of Fred D. Powell, a United States Customs Inspector, and Arthur R. Waddell, a Border Patrol Agent. The applicant's vehicle, a 1965 Ford Ranchero, was inspected and was found to contain 77 bricks (162 pounds) of marihuana in concealed compartments. A subsequent laboratory analysis performed by the Drug Enforcement Administration laboratory in Dallas, Texas, confirmed that the bricks were marihuana. At the time of his apprehension, the applicant was in possession of an Alien Registration Receipt Card (Form I–151) and Commuter Status Card (Form I–178).

On September 19, 1975, the Border Patrol officials contacted the special agents of the Drug Enforcement Administration located in Douglas, Arizona, and advised them of the seizure of the marihuana in the possession of the applicant. Several special agents of the Drug Enforcement Administration investigated the seizure, took custody of the marihuana and the applicant, and transported the applicant to their office in Douglas for interrogation. The applicant was advised of his rights and was requested to make a statement concerning the marihuana that was found in his automobile. The applicant initially told the special

agents that he did not know that the vehicle contained marihuana; that the vehicle that he drove to the border did not belong to him; that the vehicle was loaned to him by a person in Mexico that he only knew as "Chava"; that his own vehicle was damaged by Chava's vehicle in an accident in Mexico; that the person known as "Chava" lent him the 1965 Ford Ranchero so that he would be able to go to work while his own vehicle was being repaired; and that he was only in possession of the Ford Ranchero for one day.

At the hearing, a special agent of the Drug Enforcement Administration testified that during the applicant's interrogation he was advised by the special agents that they did not believe his explanation and that if he was lying they would not talk to him further. The special agent further testified that following their advice to the applicant, he told the special agents that he would tell the truth. In his second story, he told them that he was offered $200 to drive the Ford Ranchero from Mexico to a particular place in Douglas, Arizona; and that he knew something was in the truck, but did not know exactly what it was. The applicant offered to provide information concerning other persons who traffic in drugs in that border area. However, he stated to the special agents that he would not give them information concerning his arrangement to drive the Ford Ranchero across the border because he feared that such a revelation would jeopardize his life.

Another special agent of the Drug Enforcement Administration also testified that he was present during the interrogation when the applicant changed his story and revealed that he was offered $200 to drive the Ford Ranchero across the border. Border Patrol Agent Waddell and Customs Inspector Powell testified that they had observed the applicant crossing the border in a Ford Ranchero on a number of days prior to September 19, 1975, the date of the marihuana seizure.

The applicant testified at his hearing as to his innocent involvement in the attempted marihuana smuggling and maintained his initial position that the Ford Ranchero was lent to him following an automobile accident in which his own automobile was damaged. He denied changing his story during his interrogation by special agents of the Drug Enforcement Administration. Several witnesses, including his wife, testified in his behalf.

We note that on September 19, 1975, a criminal complaint was filed in the United States District Court for the District of Arizona alleging that the applicant imported 162 pounds of marihuana into the United States on September 19, 1975, in violation of 21 U.S.C. 952(a) and 960(a)(1). A copy of an Order for Dismissal issued by the same court on October 9, 1975, is of record. That document indicates that the criminal complaint against the applicant was dismissed. The reason for the dismissal is not shown in the record.

Section 212(a)(23) of the Act provides that an alien shall be ineligible for a visa and excluded from admission into the United States if he ". . . has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, or any salt derivative or preparation of opium or coca leaves, or isonipecaine or any addiction-forming or addiction-sustaining opiate; or any alien who the consular officer or immigration officers know or have reason to believe is or has been an illicit trafficker in any of the aforementioned drugs."

The applicant argues that he is not within that class of aliens who are excludable from the United States under the provisions of section 212(a)(23) of the Act. The pertinent part of this section is that part which provides:

. . . or any alien who the consular officer or immigration officers know or have reason to believe is or has been an illicit trafficker in any of the aforementioned drugs.

A criminal conviction is unnecessary to establish a basis for exclusion under this provision. The applicant contends the "illicit trafficker" provision of section 212(a)(23) does not include marihuana as one of the specified illicit drugs, and that, therefore, that provision is inapplicable to the applicant.

Prior to July 14, 1960, sections 212(a)(23) and 241(a)(11) of the Act set forth grounds for the exclusion or deportation from the United States of aliens convicted of narcotic law violations. Since marihuana is not a narcotic drug, the courts held in various decisions that convictions for illicit possession of or traffic in marihuana did not bring the alien within the immigration law which required the exclusion or deportation of one convicted of illicit possession of or traffic in narcotic drugs. To overcome the effect of these decisions, Congress amended the immigration law in 1960 to provide for the deportation of an alien convicted of illicit possession of or traffic in narcotic drugs or *marihuana*.[1] The legislative history of this amendment clearly establishes that the concern that Congress had with marihuana violations was as great as its concern with violations of law relating to narcotic drugs. Congress expressed the view that violation of laws relating to marihuana are but the forerunners of violations of other laws relating to dangerous and more addiction-forming

[1] See Act of July 14, 1960, P.L. 86-648, 74 Stat. 504, sec. 9.

184

narcotics. Congress also pointed out that the ease with which marihuana could be obtained is undoubtedly one of the leading causes of increased incidence of juvenile delinquency and it stressed the urgent necessity for the enactment of this legislation.[2] See generally *Matter of Amiet*, 14 I. & N. Dec. 146 (BIA 1972).

In 21 U.S.C. 812(b), marihuana is listed as a controlled substance (Section (c) of Schedule I). Marihuana is also defined 21 U.S.C. 802(15) under the general heading of Drug Abuse-Prevention, Control (Chapter 13). Further, in 8 U.S.C. 352(d), marihuana is listed as one of the drugs that shall be deemed to be misbranded under the Food, Drug, and Cosmetic Act unless the label includes the statement "Warning—May be Habit Forming."

In a recent decision of the Court of Appeals for the Ninth Circuit, the court affirmed this Board's decision excluding an alien for illegal trafficking in hashish under section 212(a)(23) of the Act. The court pointed out in its decision that the pertinent language clearly refers back to the earlier inclusion of marihuana as one of the drugs subject to the section. The court also held that marihuana and hashish are derivatives of a common source and that marihuana is sufficiently general in scope to include hashish in the context of applying section 212(a)(23) of the Act. See *Hamid v. INS*, No. 75-1110 (9 Cir. July 14, 1976). In light of the legislative history reflecting the position of Congress with regard to marijuana, and in view of the aforementioned interpretation of the Court of Appeals for the Ninth Circuit, we conclude that an illicit trafficker of marihuana comes within the exclusion provisions of section 212 of the Act.

In his appeal, the applicant brings to our attention the dismissal of the criminal complaint against the respondent for importation of marihuana. He submits that the criminal charge was made upon the same facts which form the basis for these proceedings; that the criminal charge was dismissed in the United States District Court because of insufficient evidence; and that the exclusion order against the applicant should be "reversed" in view of these events. We point out that the reason for the dismissal of the criminal complaint against the applicant is not contained in any official document in the record. Further, the criminal action against the applicant was a separate judicial matter, and that our administrative decision in these exclusion proceedings shall be predicated upon a review of the evidence of record and the application of the appropriate immigration law. Unlike the criminal judicial proceeding where a defendant must be found guilty beyond a reasonable doubt, an administrative finding of excludability must be based upon reasonable, substantial, and probative evidence. See *Mason v. Tillinghast*, 27 F.2d

---

[2] See U.S. Code Cong. & Ad. News, 86th Cong., Second Session 1960, pp. 3134, 3135.

580 (1 Cir. 1928); *O'Connell* v. *Ward*, 126 F.2d 615 (1 Cir. 1942). In this connection, we note that section 212(a)(23) of the Act provides that a ground for exclusion exists if an . . . immigration officer knows or has *reason to believe* . . . that an alien is an illicit trafficker.

We find that the applicant attempted to cross the border with a large quantity of marihuana concealed in his motor vehicle. We also find that his testimony as to why he happened to be driving the motor vehicle which contained marihuana on September 19, 1975, is not plausible. We further find that he did not tell the truth at his hearing when he testified that he had only driven the Ford Ranchero for one day preceding his apprehension. The testimony of the Border Patrol Agent and the Customs Inspector establish that the applicant had driven the Ford Ranchero back and forth across the border on several occasions prior to September 19, 1975, the date of his apprehension. The applicant changed his story under interrogation by authorities and admitted being offered $200 to drive the Ford Ranchero across the border and knowing that "something" was in that vehicle. These prehearing admissions contradict his original prehearing explanation and his testimony at this hearing. Under the aforementioned circumstances, we find that the applicant's testimony was not credible. In light of his lack of credibility, his offer to furnish information concerning drug traffickers, and his prehearing admission that he was offered money to drive his automobile across the border, we find that there is sufficient reason to believe that the applicant knew or had reason to know that marihuana was concealed in his automobile.

We further find that the applicant was a knowing and conscious participant or conduit in an attempt to smuggle marihuana into the United States. This activity brings him within the provisions of section 212(a)(23) of the Act relating to "illicit trafficker." Cf. *Matter of R—H—*, 7 I. & N. Dec. 675 (BIA 1958). It is no defense that the applicant has only committed one transgression. The statutory reference to an illegal trafficker does not necessarily entail proof of organized continuous trade in marihuana. In *Matter of P—*, 5 I. & N. Dec. 190 (BIA 1953), an alien who on a single occasion bought narcotics for resale in the United States was deemed an illicit trafficker within the meaning of section 212(a)(23) of the Act. In this case, the applicant attempted to smuggle 162 pounds of marihuana into the United States. In view of such a large quantity of marihuana, we infer that it was not intended for personal use. We conclude, therefore, that the marihuana was to be used in "traffic" and that the applicant is an illicit trafficker as contemplated by the statute.

Inasmuch as the applicant is an alien commuter, he does make a meaningful departure when he leaves the United States. Hence, the applicant does not come within the ambit of *Rosenberg* v. *Fleuti*, 374

U.S. 449 (1963), and is subject to exclusion proceedings upon his return to the United States. *Matter of Diaz*, Interim Decision 2443 (BIA 1975); *Matter of Hoffman-Arvayo*, 13 I. & N. Dec. 750 (BIA 1971); *Matter of Moore*, 13 I. & N. Dec. 711 (BIA 1971). We also note that, even if the respondent was not an alien commuter, the *Fleuti* doctrine would not apply to him because of his marihuana smuggling activity. See *Matter of Leal*, Interim Decision 2439 (BIA 1975); *Matter of Valdovinos*, 14 I. & N. Dec. 438 (BIA 1973); *Matter of Valencia-Barajas*, 13 I. & N. Dec. 369 (BIA 1969); and *Matter of Alvarez-Verduzco*, 11 I. & N. Dec. 625 (BIA 1966).

The immigration judge properly found the applicant inadmissible under section 212(a)(23) of the Act. Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.