**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-6640

DONALD IGWEBUIKE,

Petitioner - Appellant,

versus

RICHARD C. CATERISANO, Maryland District
Director of the U. S. Citizenship &
Immigration Services,

Respondent - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Deborah K. Chasanow, District Judge. (CA-
04-1586-DKC)

Argued: October 27, 2006          Decided: April 20, 2007

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

Reversed and remanded with instructions by unpublished per curiam
opinion.

**ARGUED:** Steven Kreiss, Washington, D.C., for Appellant.  Bryan
Stuart Beier, UNITED STATES DEPARTMENT OF JUSTICE, Office of
Immigration Litigation, Washington, D.C., for Appellee. **ON BRIEF:**
Rod J. Rosenstein, United States Attorney, Jennifer A. Wright,
Assistant United States Attorney, Baltimore, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Donald Igwebuike, an alien, appeals the district court's order dismissing, for lack of subject matter jurisdiction, his petition for a writ of habeas corpus. Igwebuike filed the habeas petition after the Bureau of Citizenship and Immigration Services placed him in jail pursuant to a final order of exclusion and rejected his I-485 application for adjustment of status to permanent legal resident. The district court had jurisdiction to consider whether the District Director committed legal error in determining that Igwebuike was inadmissible and therefore ineligible for adjustment of status. We have jurisdiction to review the district court's dismissal order. Because we conclude that legal error was committed, we remand for the district court to enter an order instructing the District Director to reconsider whether Igwebuike is eligible for an adjustment of status.

I.

Igwebuike, a citizen of Nigeria, entered the United States on August 10, 1980, as a J-1 exchange student to attend Clemson University. After graduation he received temporary worker status to play professional football for the Tampa Bay Buccaneers and the Minnesota Vikings. His NFL career ended prematurely after his 1990 indictment in Tampa on charges relating to the importation of heroin into the United States. Igwebuike maintained his

2

innocence, went to trial, and was acquitted by a jury. He remained in the United States and in 1995 married Gacquett Jennings, a U.S. citizen.

In 1996 Igwebuike left the United States for a brief visit abroad. Upon his return he was paroled into the country and ordered to appear before the Immigration Court. Igwebuike was charged with being an excludable alien on the grounds that (1) he lacked an immigration visa or other valid entry document, see 8 U.S.C. § 1182(a)(7)(A)(i)(I), and (2) he entered the United States for employment purposes without a labor certification, see id. § 1182(a)(5)(A)(i).

In September 1997, before exclusion proceedings commenced, Gacquett Jennings filed an I-130 petition to register Igwebuike as an immediate relative of a U.S. citizen. Igwebuike simultaneously filed an I-485 application, requesting the Immigration and Naturalization Service (INS) to adjust his immigration status (upon approval of the I-130) to legal permanent resident.

On February 8, 1999, Igwebuike moved to terminate the exclusion proceedings due to the pending I-130 and I-485 applications. The immigration judge (IJ) informed him that the Immigration Court did not have jurisdiction to adjudicate the I-130 petition while the exclusion proceedings were ongoing. At the next hearing, in March 1999, Igwebuike denied both charges of

excludability.  At a third hearing in June 1999, however, Igwebuike admitted excludability on the invalid document charge.  The IJ proceeded to find Igwebuike excludable on both charges and ordered him excluded and removed from the United States.

On July 15, 1999, an INS adjudication officer interviewed Igwebuike and Jennings regarding his I-485 application and her I-130 application.  The officer approved the I-130 application, but deferred action on the I-485 application pending further consideration.  The District Director, in a letter dated July 15, 1999, requested that Igwebuike "[s]ubmit the complete disposition for the . . . arrest" on November 9, 1990.  J.A. 104.  The letter specified that "[t]he disposition must be issued by the court which had jurisdiction over the case."  Id.  On August 10, 1999, Igwebuike provided the adjudication officer with a copy of the judgment of acquittal, issued by the presiding judge, showing that Igwebuike was acquitted on all three charges in the indictment. The INS took no action on Igewbuike's application despite several inquiries by Igwebuike's lawyer and his wife (Jennings).

On December 13, 2001, the INS took Igwebuike into custody pursuant to the 1999 order of excludability.  He was released on a $5,000 bond on December 21, 2001, after the INS was unable to remove him from the United States.  The INS, which in 2003 was moved into the Department of Homeland Security and renamed the Bureau of Citizenship and Immigration Services (BCIS), detained

4

Igwebuike again on May 3, 2004. Igwebuike informed the BCIS that his application for adjustment of status, filed seven years prior, was still pending. On May 12, 2004, the District Director denied Igwebuike's I-485 application for an adjustment of status. The order stated:

> Although you were acquitted of Importation of Heroin, you failed to submit the complete arrest/police reports detailing the circumstances surrounding your arrest. Therefore, you have failed to establish to the satisfaction of the Service that you were entirely innocent of [the drug trafficking charges]. Absent such documentation, you have failed to establish your admissibility to the United States pursuant to Section [1182(a)(2)(C)(i)], as a suspected trafficker in controlled substances.

J.A. 122. The Director concluded, "As you are inadmissible to the United States pursuant to [§ 1182(a)(2)(C)(i)], you are ineligible for adjustment of status, both as a matter of law and as a matter of discretion." J.A. 122. No administrative appeal of this determination was available. See 8 C.F.R. § 245.2(a)(5)(ii).

Igwebuike, who remained in custody, then filed a petition for a writ of habeas corpus, see 28 U.S.C. § 2241, in district court. He contended that the District Director erred in concluding that he was an inadmissible alien under 8 U.S.C. § 1182(a)(2)(C)(i) and therefore statutorily ineligible for an adjustment of status. Igwebuike also contended that the Director failed to comply with the procedural requirement in 8 C.F.R. § 103.2(b)(8) by denying his application without first requesting additional evidence. Finally, Igwebuike contended that the Director did not fairly adjudicate his

5

adjustment of status application, in violation of his right to due process. In March 2005 the district court granted the government's motion to dismiss the habeas petition, holding that 8 U.S.C. § 1252(a)(2)(B) prevented judicial review of the Director's decision. Igwebuike seeks to appeal the district court's order.

II.

We must first determine how to classify Igwebuike's case in this court. After his case came to us, the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, went into effect. The Act eliminated habeas jurisdiction over final orders of removal, making a petition for review filed in a federal court of appeals the "sole and exclusive means for judicial review" for most orders of removal. 8 U.S.C. § 1252(a)(5). The Act instructed district courts to transfer all pending habeas petitions that challenge a final order of removal to the appellate court in which a petition for review could have been filed in the first instance. 119 Stat. at 311. Although the REAL ID Act is silent with respect to habeas appeals pending before appellate courts on the date the Act went into effect, this court and others have construed such appeals as petitions for review filed under § 1252. See, e.g., Jahed v. Acri, 468 F.3d 230, 233 (4th Cir. 2006); Schmitt v. Maurer, 451 F.3d 1092, 1095 (10th Cir. 2006); Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1053 (9th Cir. 2005).

Igwebuike clarified at oral argument that he does not challenge the order of removal.  (Indeed, he conceded excludability before the IJ.)  He only challenges the District Director's determination that he is not eligible for consideration for an adjustment of status.  Accordingly, the REAL ID Act does not apply, and we therefore consider this proceeding as an appeal from the district court's dismissal of his habeas petition.

The government argues that our review of the district court's order dismissing Igwebuike's habeas petition is barred by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).  The government relies specifically on 8 U.S.C. § 1252(a)(2)(B), which states:  "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section [1255]," relating to adjustment of status.  This provision, the government argues, prohibits our review of Igwebuike's habeas petition because the decision to grant an adjustment of status is committed to the discretion of the Attorney General, acting through his designated district director.  See 8 U.S.C. § 1255(a) (stating that "the status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe").

Section 1252(a)(2)(B) is not applicable to the present case.  Section 1252, as amended by the IIRIRA, governs judicial review over exclusion proceedings initiated after April 1, 1997,

7

the date the IIRIRA went into effect.  See IIRIRA, Pub. L. No. 104-208, § 309(a), 110 Stat. 3009; Okpa v. INS, 266 F.3d 313, 316-17 (4th Cir. 2001).  The proceedings against Igwebuike were commenced before this date, in June 1996.  Thus, the IIRIRA's transitional rules, not the permanent rules, determine our jurisdiction.  See IIRIRA, § 309(c)(4), 110 Stat. 3009.

Section 309 of the IIRIRA, the transitional rule governing judicial review, states that "there shall be no appeal of any discretionary decision under [§ 1255]."  Id. § 309(c)(4)(E). This transitional rule limits jurisdiction over appeals only, not petitions for habeas corpus.  See Bowrin v. INS, 194 F.3d 483, 488 (4th Cir. 1999) (stating that when Congress "used the term 'appeal,' [it] meant the process of ordinary appellate review commenced with the filing of a notice of appeal or a petition for review in the court of appeals"). Section 309(c)(4) does not refer to habeas relief under § 2241, and we do not interpret it to "preclude district court jurisdiction over such habeas petitions." Id.

Although the transitional rules of the IIRIRA do not bar habeas jurisdiction, our review is limited.  Habeas jurisdiction under § 2241 permits courts to review "pure questions of law [that do] not touch upon decisions that are under the discretion of the Attorney General." Moussa v. Jenifer, 389 F.3d 550, 554 (6th Cir. 2004) (citing INS v. St. Cyr, 533 U.S. 289, 305 (2001)).  The

8

government states that we lack jurisdiction over Igwebuike's habeas petition because the decision to adjust an alien's status is committed to the discretion of the Attorney General. See 8 U.S.C. § 1255. As the government points out, "[w]e lack jurisdiction to review a denial of status adjustment." Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 104 n.1 (4th Cir. 2001).

Igwebuike, however, does not challenge a discretionary decision by the Director. Indeed, the Director did not have the opportunity to exercise discretion because he determined that Igwebuike was an inadmissible alien under § 1182(a)(2)(C)(i) and therefore statutorily ineligible for discretionary relief. See § 1255 (permitting the Attorney General to adjust the status of aliens who are "admissible to the United States"). Igwebuike only seeks review of what he contends is legal error in the determination that rendered him ineligible for an adjustment of status.

Whether Igwebuike is an inadmissible alien, and therefore ineligible for an adjustment of status, is a question that involves the application of legal standards. There is a "distinction between eligibility for discretionary relief . . . and the favorable exercise of discretion." St. Cyr, 533 U.S. at 307 (2001). A court may review the legal standards applied in a determination of eligibility, but it may not remand a decision to grant or withhold discretionary relief. See DaCosta v. Gonzales,

9

449 F.3d 45, 49 (1st Cir. 2006) (holding that the court could review the BIA's determination that petitioner was ineligible for discretionary relief); Morales-Morales v. Ashcroft, 384 F.3d 418, 422 (7th Cir. 2004) (concluding that the IIRIRA does not "clearly indicate that the exclusion from judicial review is so extreme as to purport to authorize the Attorney General to disregard . . . statutory criteria"). We conclude that we have jurisdiction to review whether the Director committed legal error in determining that Igwebuike is an inadmissible alien under 8 U.S.C. § 1182. We stress that our review is limited to reviewing whether Igwebuike is legally eligible to be considered for discretionary relief, specifically, an adjustment of status. We would not review the Director's exercise of his discretion whether to adjust Igwebuike's status.

III.

We now turn to the merits of Igwebuike's petition. First, we consider whether the Director committed legal error in finding Igwebuike inadmissible and, therefore, statutorily ineligible for an adjustment of status. Second, we consider his claim that the Director failed to comply with the procedural requirements in 8 C.F.R. § 103.2(b)(8). Finally, we take up Igwebuike's due process challenge.

8 U.S.C. § 1255(a) authorizes the Attorney General to adjust an alien's status to legal permanent resident if "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence." An alien is thus not eligible for an adjustment of status if he is inadmissible under § 1182. Section 1182(a)(2)(C) provides that an alien is inadmissible if "the Attorney General knows or has reason to believe [the alien] is or has been an illicit trafficker in any controlled substance." The Director concluded that Igwebuike was inadmissible under this provision because Igwebuike "failed to establish to the satisfaction of the Service that [he] was entirely innocent" of the 1990 charges for importing heroin. J.A. 122. This determination rendered Igwebuike ineligible for the discretionary relief provided in § 1255(a).

The Director committed legal error in finding Igwebuike inadmissible under § 1182(a)(2)(C). The statute explicitly states that an alien is inadmissible only when the Attorney General "knows or has reason to believe" the alien is a drug trafficker. This belief must be based on "reasonable, substantial, and probative evidence." Matter of Rico, 16 I. & N. Dec. 181, 185 (BIA 1977); Alarcon-Serrano v. INS, 220 F.3d 1116, 1119 (9th Cir. 2000). The Director did not cite any evidence, other than a charge for which

11

Igwebuike was acquitted, to support a finding that Igwebuike was a drug trafficker.

An arrest or charge by itself is not substantial evidence of drug trafficking. Although the Director may determine that an alien is inadmissible based on facts underlying an arrest, he must cite these facts as support for his "reason to believe" that the petitioner was involved in drug trafficking. In Matter of Rico, for example, the BIA did not rest on the evidence of Rico's arrest for drug trafficking, but detailed all of the evidence against him, including the undisputed fact that he had a "large quantity of marihuana concealed in his motor vehicle" at the time of his arrest. 16 I. & N. Dec. at 186. Similarly, in Rojas-Garcia v. Ashcroft, 339 F.3d 814 (9th Cir. 2003), the Ninth Circuit upheld the BIA's decision to deny an I-485 application because, in addition to a previous arrest for drug trafficking, two undercover detectives testified that they had personally arranged drug deals with the petitioner. Id. at 818; see also Lopez-Molina v. Ashcroft, 368 F.3d 1206, 1211 (9th Cir. 2004) (finding sufficient reason to believe the alien had committed illegal acts underlying previous drug trafficking arrest because the government submitted documents describing the police surveillance of the alien and the alien's subsequent attempt to escape with 147 pounds of marijuana). Because the Director did not point to reasonable, substantial, and probative evidence to support a belief that Igwebuike had

12

trafficked in drugs, he erred in concluding that he was inadmissible.

The government argues that the Director did not need to provide substantial evidence of drug trafficking because Igwebuike bears the burden of establishing eligibility for relief. In order to meet this burden, the government argues, Igwebuike must show that there is no reason to believe that he was involved in drug trafficking. According to the government, Igwebuike failed to meet this burden because he did not provide evidence, such as arrest or police reports, showing that he was innocent of the drug trafficking charges. The government overstates the nature of what Igwebuike had to show in this case.

An alien seeking an adjustment of status has the burden to prove that he is eligible for relief. See 8 C.F.R. § 103.2(b)(1); Rashtabadi v. INS, 23 F.3d 1562, 1567-68 (9th Cir. 1994); cf. 8 U.S.C. § 1361 (stating that an alien seeking admission has the burden to prove that he "is not inadmissible under any provision of this chapter"). This does not mean, however, that Igwebuike must affirmatively prove that he was innocent of drug trafficking. An alien is inadmissible under § 1182(a)(2)(C), and therefore ineligible for relief, if the Attorney General "knows or has reason to believe" that he is involved in drug trafficking. An alien satisfies his burden to show that he is not inadmissible under this provision once he submits any evidence requested by the

13

Director, see 8 C.F.R. § 103.2(b)(8), and that evidence, together with other evidence before the Director, is not sufficient to establish knowledge or belief on the Director's part that the alien is a drug trafficker. Igwebuike has met this burden because his arrest for drug trafficking, and the disposition of his case (the judgment of acquittal) that he submitted at the Director's request, did not provide reasonable, substantial, and probative evidence of drug trafficking. See Matter of Rico, 16 I. & N. Dec. at 185; Alarcon-Serrano, 220 F.3d at 1119. In short, the evidence was insufficient as a matter of law to support the Director's finding that Igwebuike was inadmissible under § 1182(a)(2)(C).

Of course, our conclusion that the Director committed legal error in finding Igwebuike inadmissible does not suggest that Igwebuike is entitled to an adjustment of status. The grant of an application for adjustment of status is a matter of "administrative grace, not mere eligibility." Matter of Leung, 16 I. & N. Dec. 12, 14 (BIA 1976). Thus, in addition to proving eligibility for relief, an alien must also show that "discretion should be exercised in his favor." Matter of Patel, 17 I. & N. Dec. 597, 601 (BIA 1980).

B.

Igwebuike also claims that his failure to submit the arrest or police reports to the BCIS could not render him

14

ineligible for relief because the Director never requested this information pursuant to 8 C.F.R. § 103.2(b)(8). This regulation states, "If there is evidence of ineligibility in the record, an application or petition shall be denied on that basis alone." If, on the other hand, "the evidence submitted either does not fully establish eligibility for the requested benefit or raises underlying questions regarding eligibility, the Service shall request the missing initial evidence." J.A. 122.

The government concedes that, pursuant to the regulation, the Director must request additional information unless the evidence in the record is sufficient to establish ineligibility. We have already explained that an arrest for drug trafficking, without any of the facts underlying the arrest, does not give the Director reason to believe that the petitioner was involved in that activity. Thus, the Director could not find Igwebuike ineligible based on the evidence in the record. The drug trafficking arrest, however, does "raise underlying questions regarding eligibility," see § 103.2(b)(8), and the Director was obliged to request further information, such as arrest or police reports, if he believed it was necessary to determine Igwebuike's eligibility for relief. Once the Director requests additional information, he may deny the application if the alien fails to provide the information, see § 103.2(b)(13), or prove its non-existence, see § 103.2(b)(2).

15

C.

Finally, we address Igwebuike's due process claim. Igwebuike submits that he agreed to admit excludability solely because the IJ promised that the INS would fairly adjudicate his adjustment of status petition. Igwebuike argues that the Director disregarded this agreement and arbitrarily denied his application, in violation of his due process rights. We reject this claim for two reasons.

First, there is no evidence in the record that Igwebuike reached such an agreement with the immigration judge. The IJ merely informed Igwebuike that the INS could not process his application for an adjustment of status while the exclusion proceedings were ongoing. Igwebuike then conceded excludability so that the INS could process his I-130 and I-485 petitions. There is no record that the immigration judge and Igwebuike reached any agreement regarding his I-485 application.

Second, a due process claim requires the deprivation of some cognizable interest or property. Matthews v. Eldridge, 424 U.S. 319, 332 (1976). Aliens do not have a property interest or right to an adjustment of status. As we explained in Smith v. Ashcroft, "discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause." 295 F.3d 425, 430 (4th Cir. 2002). Accordingly, Igwebuike's due process claim must fail.

16

IV.

For the foregoing reasons, we reverse the district court's order dismissing Igwebuike's habeas corpus petition for lack of subject matter jurisdiction. Our ruling requires a limited remand. We remand for the district court to enter an order giving the District Director sixty days in which to begin reconsideration of Igwebuike's eligibility for adjustment of status, using the appropriate evidentiary standard and complying with 8 C.F.R. § 103.2(b)(8). If Igwebuike is determined to be eligible for consideration for adjustment of status, the Director may, of course, decide whether that discretionary relief is warranted. If the Director provides satisfactory proof, within ninety days of the district court's order, that the reconsideration is under way, the court may dismiss the case. If the Director fails to comply, the district court will issue a writ of habeas corpus.

REVERSED AND REMANDED
WITH INSTRUCTIONS